## Commonwealth v. Fogelman

*Donald E. Wieand,* for Commonwealth.
*Ernest F. Ritter,* for defendants.

HENNINGER, P. J., February 5, 1963.—Plaintiff filed a complaint against defendants, husband and wife, claiming reimbursement in the sum of $16,274.35, being the balance owed the Commonwealth out of a total of $21,215.97 expended for the maintenance of defendants' son, now almost 33 years of age, who has been a patient in the Allentown State Hospital since May 24, 1935, and who still is a patient there.

The complaint recites the above facts and further states that the patient's only assets consist of a paid-up endowment policy for $500 and that defendants are owners as tenants by the entireties of premises 1643 Allen Street, Allentown, Lehigh County, Pennsylvania, and that defendants have refused to pay the balance due.

Defendants have filed preliminary objections: (1) Proceedings should be by petition rather than by complaint; and (2) no averment that defendants are finan-

cially able to pay. The first objection has been withdrawn.

There is merit in the second preliminary objection. We have so decided in Commonwealth v. Groller, 41 D. & C. 366, 371. This case differs from the Groller case only in that there was no averment of the ownership of property in the Groller case, whereas in this case there is an averment that defendants own the Allen Street property.

We consider this difference in pleading immaterial and we quote from page 371 of the Groller case:

". . . We do not say that capital assets may not be charged in the hands of a living person, but simply hold that their possession is not conclusive of a person's ability to pay: Commonwealth v. Adams, supra; Commonwealth v. Allison, supra. In this case we have no averment whatever that defendant has any assets, income, or source of support whatsoever. The distinction between past or future maintenance may be important, so far as the remedy for enforcement is concerned, but we are convinced that in either case there is no enforcible obligation unless the person sought to be charged is, in the discretion of the court, financially able to make such compensation, without incurring undue personal privation."

There is no averment that defendants own their property free and clear of encumbrances, and we are convinced that if they do its value would still be less than half the amount of the Commonwealth's claim.

In the Groller case, the distinction is made between collection from the estate of a deceased relative of an incompetent (for decedent himself has no further needs) and from the relative himself, who has to provide for his own living for years to come.

The Commonwealth has stated that its policy is not to collect until defendants have died. When the case comes to the point of entering judgment, we may

choose between our own decision in Commonwealth v. Schmidt, 70 D. & C. 335, in which we ordered immediate installments on a reduced amount, rather than the device of the learned Judge Flood, then on the Common Pleas bench of Philadelphia, in Commonwealth v. Morton, 68 D. & C. 1, in which a stay of execution for life was made a condition of judgment. Even in the latter case, the supporting relatives are deprived of an asset they may need for themselves in case of protracted illness or other emergency. See Commonwealth v. Clemson, 80 D. & C. 130, 134.

We are not certain of the validity of an assurance on the part of any present state official. He or his successors may be compelled by law to enforce a judgment, regardless of any assurances given; nor, despite the broader powers for stay of execution given under Pa. R. C. P. 3121 (b) (2), are we certain that we may enter judgment and then prevent collection for the lifetime of defendants.

The Commonwealth contends that all cases relating to "ability to pay" in assumpsit actions have been rendered nugatory by repeal of the Act of June 1, 1915, P. L. 661, and its amendments and supplements, 71 PS §1781 to §1788 inclusive. In the first place, these acts have been repealed (section 1001 of Mental Health Act of June 12, 1951, P. L. 533, 50 PS §1621) only insofar as inconsistent with the provisions of the Mental Health Act.

When we turn to the Mental Health Act, we find that section 701, 50 PS §1361, provides for the *order of liability*. Section 703, 50 PS §1363, then provides as follows:

"(a) When any patient is committed by order of court, the committing court, at the time of commitment, shall make an order for the payment of the costs of care of the patient.

"(b) When any patient is or has been admitted to any institution, any court of the county in which the

patient resided prior to his admission shall have power to make an order for the payment of the costs of care of the patient.

"(c) *Before making any order, the court shall take into consideration the ability to pay of the patient or the persons liable for his support.*

"(d) Any court having the power or duty to make an order shall have the power or duty to modify or revise the order from time to time, on cause shown.

"(e) Every order shall be entered in the prothonotary's office, and shall have the effect of a judgment.

"(f) The liability of any person not a patient for payment of costs of care of any mental defective or epileptic patient shall be the amount of the court order regardless of the actual costs of care of such patient, and payment of the amount so ordered shall relieve any person not a patient of all further liability for payment of costs of care of such mental defective or epileptic patient."

We are convinced, therefore, that ability to pay is still a condition precedent to collection from a living relative of a mental patient, whether the action be in assumpsit or by petition for a continuing order: Commonwealth v. Fedor, 23 D. & C. 2d 91.

This interpretation of the Mental Health Act is fortified by the provisions of subparagraph (f) above cited, added to the Mental Health Act by the amending Act of December 10, 1959, P. L. 1743. This subparagraph limits the liability of relatives to such amount as the court may have ordered. Conceding that this subparagraph may not prevent the Commonwealth from proceeding for past support, it would be exceedingly unfair to permit the Commonwealth to allow arrearages to run in any specific case rather than to petition for the fixing of a relative's liability.

This injustice is particularly apparent in this case where the parents have paid $4,000 toward their son's

support, although admittedly this represented roughly only $4.50 per week, a small portion of the actual cost of maintenance.

We shall not require the Commonwealth to plead a series of facts demonstrating ability to pay (see Commonwealth v. Law, 55 D. & C. 698, 699), nor is it necessary to prove that defendants are able to pay in full the Commonwealth's demand. We do insist that ability to pay be pleaded. Defendants, who are more familiar with their own financial circumstances, may then plead such facts as may contradict the Commonwealth's assertion of ability to pay.

Now, February 5, 1963, defendants' preliminary objection no. 2 is sustained and Commonwealth's complaint is ordered dismissed unless it shall, within 20 days after service of this order upon its counsel, file an amendment in accordance with this opinion.